WILLIAM D. MANCHESTER *vs.* RUFUS C. SEARLE & another.

Hampden.   Sept. 26, 1876. — Jan. 1, 1877.   COLT & MORTON, JJ., absent.

An agreement, made prior to a mortgage upon a piece of land, to paint and paper a house thereon at a fair price, which mentions the number of coats of paint to be placed upon the outside, but does not mention the number of coats upon the inside, nor the number of rooms, nor what rooms are to be papered, nor the kind and quality of the paper to be used, does not constitute a contract sufficiently precise to create a lien upon the land for labor performed and materials furnished after the execution of the mortgage.

PETITION, under the Gen. Sts. *c.* 150, to enforce a lien for labor performed and materials furnished in the alteration and repair of a house in Springfield. The petition alleged that the petitioner ceased to perform and furnish said labor and materials on July 9, 1874; and that, within thirty days thereafter, he filed in the office of the clerk of the city of Springfield a statement duly sworn to, giving therein a just and true account of the amount due him for said labor and materials with all just credits. The first item of the account annexed was dated June 13, 1874, and the last, July 9, 1874. The whole amount stated to be due was $174.80, of which amount all but about $50 was charged before June 27.

Trial, without a jury, in the Superior Court, before *Allen,* J., who allowed a bill of exceptions in substance as follows :

There was evidence tending to show the following facts : On June 27, 1874, the plaintiff went to the premises with the respondent Searle, then the owner of the premises, who told him that he wanted the house painted outside and in ; (the number of coats outside was stated, but not the number on the inside ; ) that he wanted some of the rooms papered, but which rooms was not definitely determined upon, nor was the kind or quality of paper designated. The plaintiff agreed to do the work and furnish the materials as cheaply as he could, and at fair and reasonable prices, but no price was agreed upon, except as thus stated ; but he was to do all the painting and papering required. On July 17, 1874, the plaintiff commenced work and performed the labor and furnished the materials set forth in his account. After the work was begun, the respondent Searle selected the paper for the rooms. It appeared that the inside painting was not all of the same number of coats, but that the understanding was that the plaintiff should paint it in a proper manner, and upon some rooms he put one coat, some two, and some he only patched. On July 10, 1874, and before any of the labor was performed or materials furnished, the lot, upon which the house stood, was conveyed by mortgage to one Nichols, who sold the same under his mortgage to one Robinson, who was a party to this proceeding ; and who asked the judge to rule that upon this contract a lien could not be maintained against the title under the mortgage executed before any work was done under it.

The judge declined so to rule, and did rule that if the price was susceptible of being determined by what was the fair, reasonable and customary price for such work, and the quantity of work by the needs of the building according to the terms of the contract, then the lien could be maintained, although the amount and price of the work were not determined upon before the conveyance thereof.

Judgment was ordered for the petitioner; and the mortgagee alleged exceptions.

*G. Wells*, for the mortgagee.

*G. D. Robinson*, for the petitioner.

LORD, J. The question presented by the bill of exceptions in this case is, whether the labor and materials for which a lien is claimed, though furnished and performed after a mortgage had been made of the estate, were so performed and furnished under a contract made before the mortgage. We are of opinion that they were not. In order to create a lien upon real estate by a parol contract against a subsequent mortgagee without notice, it is necessary that the contract should be precise, certain and definite, not subject to be affected, modified and changed by the will of one of the parties. An agreement to do what is necessary to be done, for a fair price, when such necessity is to be determined by the owner, the work of which is not commenced until after the alienation of the building, is not a contract such as is contemplated by the statute. In the case at bar, the agreement of the petitioner, if called such, was to do the painting and papering required as cheaply as he could, and at fair and reasonable prices. It was the ordinary case of a mechanic, before entering upon labor for another, agreeing that he would thereafter do such work as the employer wished to have done. In this case, it was employment in painting and papering a house. As to the painting, the employer told the petitioner how many coats of paint he wanted on the outside, but did not tell him how many he wanted on the inside; he told him, also, that he wanted some of the rooms papered, but did not inform him which rooms, nor how many; neither was the kind or quality of the paper to be put on designated. It was after the mortgage that the papers were selected by the owner; and it was after the mortgage that the petitioner commenced to do work. On some of the rooms

he put on one coat of paint, on some two, and some he only patched; whether the paper was to be of a kind and quality the price of which per roll was to be a few cents or a few dollars, was not agreed upon, and was to be determined only by the choice of the employer. Certainly the estate of a subsequent mortgagee without notice cannot be defeated by an agreement so loose, vague and indefinite, to be limited in its extent only by the subsequent determination of the mortgagor. The conversation which took place between the parties was precisely the conversation which ordinarily occurs between parties when labor is performed and materials furnished under an implied contract, and, if the work had been actually done and the materials furnished before the mortgage, a lien could have been established upon the implied contract of the owner to pay a reasonable price therefor. We decide this upon the case as recited in the bill of exceptions.

Upon examining the papers, however, we find an extraordinary state of things. The petitioner sets forth in his petition that he filed, in the office of the clerk of the city of Springfield, under oath, a just and true statement of his account, which he annexes to his petition. His petition alleges, and his account shows, that he performed the last labor on July 9, the day before the mortgage was executed. The account shows that its first item of charge was on June 13, and that by far the greater part of the account is before June 27, the day on which, by the bill of exceptions, the contract was made. This, if true, would create a lien upon the real estate. The bill of exceptions, however, finds that no labor was performed nor materials furnished until July 17, a week after the execution of the mortgage. Apparently therefore no statement of account for the labor and materials for which a lien is claimed was filed in the office of the clerk as required by law; or the whole account was antedated to a time before any part of the work was done and before the mortgage. If we were not satisfied that no contract sufficient to create a lien is disclosed by the bill of exceptions, we should need some explanation of the account thus stated to have been filed under oath. As the exceptions must be sustained and the case will stand for further proceedings in the Superior Court, we deem it necessary only to call the attention of the parties to the facts.

*Exceptions sustained.*